UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EMERGENCY DICTATION SERVICES,
INC., ET AL.,

    Plaintiff,                                 Case No. 05-72137

v.                                              Honorable Nancy G. Edmunds

CBAY SYSTEMS, LTD.,

    Defendant.
_____/

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS OR TRANSFER [5]**

This case comes to the Court on Defendant[1] CBay Systems's Motion to Dismiss or, in the Alterative, Transfer. The issues of the case are the subject of a mirror-image declaratory judgment action that Defendant has previously filed complaint in the District of Maryland. It is clear that only one of the cases should proceed. Plaintiffs contend that Defendant filed the Maryland case "secretly," as settlement discussions were ongoing, in an act of wrongful venue shopping. Defendant contends that there was nothing wrongful about its conduct and that this Court should strictly apply the "first-to-file" rule. For the following reasons, the Court DENIES Defendant's motion.

I.     Background

On February 14, 2004, Defendant CBay Systems, a Maryland-based company, purchased substantially all of Plaintiffs' Michigan-based medical transcription services. The

---

[1] The parties are reversed in the mirror-image in the District of Maryland. For purposes of this Order, "Defendant" and "Plaintiffs" always refer to their respective roles in the Eastern District of Michigan.

purchase agreement calls for three installments, the first to be paid upon closure, and the second and third to be paid on the first and second anniversary of closure, respectively. The exact amounts due under the second and third installments depend on a formula delineated in the agreement, which accounts for factors such as Defendant's post-purchase revenue. On February 11, 2005, the date on which payment was due, Plaintiffs' counsel wrote a letter to Defendant demanding full payment for the 2005 installment. Defendant refused, claiming that the terms of the agreement foreclosed any obligation it might have had.

On February 17, 2005, Plaintiffs' counsel wrote a second letter, stating that since the February 11 letter, Defendant had not paid the 2005 installment, or returned any telephone calls. Plaintiffs' counsel asked Defendant to pay the installment or contact him immediately to resolve any disputes. Counsel also stated that "If I do not hear from you by tomorrow afternoon, then my clients will have no choice but to avail themselves to whatever legal remedies may be available to them." (Pl.s' Resp. Ex. 2.)[2]

The parties then began negotiations over the 2005 installment amount, which lasted about two months. Defendant describes the negotiations as follows: "Although the parties continued to have some discussions about the 2005 Installment, by early April, 2005, it appeared that those discussions were not going to be successful in resolving the dispute." (Def.'s Mot. 3.) Plaintiffs, however, paint a different picture: "The parties exchanged phone calls, economic data and participated in at least two conference calls all designated to reach a negotiated settlement of the parties' dispute." (Pl.s' Resp. 2.) A letter from

---

[2]Plaintiffs titled their response to Defendant's motion a "Reply," but for purposes of clarity, it is referred to here as "Pl.s' Resp."

Plaintiffs' counsel to Defendant's counsel, faxed on Thursday, April 7, 2005,[3] reads as follows:

> While I am anxious to bring this matter to a conclusion, I do not think it would be productive for us to start a new round of conference calls where the parties try to convince each other that the other side is wrong. We are quite satisfied with our [proposed 2005 installment amount] and [Plaintiffs] will not accept a payment in the range that has been advanced by CBay thus far.
>
> Our demand is that CBay pay the full amount owed as determined by [Plaintiffs'] outside accounting firm and reflected herein. If CBay is willing to pay this amount or something very close to it, then this matter will be resolved. If the dispute over the 2005 installment payment cannot be resolved, then [Plaintiffs] will avail themselves to whatever legal remedy is available to them.
>
> Please communicate [Plaintiffs'] position to CBay and provide me with its response. I look forward to hearing from you soon.

(Def.'s Reply Ex. 2.)

Defendant filed a declaratory judgment suit the following Monday, April 11, 2005, in the United States District Court for the District of Maryland.

Plaintiffs contend that when the Maryland suit was "secretly" filed, "the parties were working toward a global settlement . . . ." (Pl.s' Resp. 2.) Plaintiffs further state that

> CBay did not advise the Plaintiffs that they filed suit, nor was the lawsuit a subject of any conversation among the attorneys or the parties until a computer generated report made Plaintiffs' counsel aware of the Maryland declaratory action. CBay still chose not to serve its declaratory action on [Plaintiffs] and the parties continued their negotiations for another six weeks.

(*Id.*) Defendant points out, however, that "Plaintiffs' counsel became aware of CBay's Maryland action shortly after it was filed, and indeed, mentioned that fact to Defendants' counsel within a few days of the suit having been filed." (Def.'s Mot. 3.) Thus, it appears

---

[3]The letter is dated April 6, 2005, but Defendants claim that they did not receive it until April 7. (Def.'s Mot. 3.)

3

that as long as negotiations continued, Defendant had no intention of pursuing its Maryland action. (Pl.s' Resp. 2.)

At the end of May, 2005, it appears that negotiations broke down further. On May 31, Plaintiffs filed their complaint in the present case. Defendant then began to proceed on its pending Maryland declaratory action. On June 13, Defendant served Plaintiffs with notice of the case. (Pl.s' Resp. 5.) Two days later, Defendants filed a motion for a temporary restraining order in the Maryland case. Then, on June 27, Defendant amended its complaint to include claims against the individual Plaintiffs related to various contract and employment issues.[4]

On July 15, 2005, Plaintiffs filed in the Maryland court a Motion to Dismiss and/or to Transfer Venue to the Eastern District of Michigan. On July 21, 2005, Defendant filed in this Court the inverse motion, seeking to transfer the entire case to Maryland.

II. Motion to Transfer Venue

    A. Standard of Review

28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The district court deciding a § 1404(a) motion to transfer "has broad discretion to grant or deny" that motion. *Phelps v. McClellan*, 30 F.3d 658, 663 (6th Cir. 1994) (internal quote and citation omitted). The Court must determine whether (1) "the action could have been brought in the proposed transferee district," (2) "a transfer would promote the interests of justice," and (3) "a transfer would

---

[4]After Defendant corporation's purchase of the corporate Plaintiff, some of the individual Plaintiffs went to work for Defendant.

4

serve the parties' and witnesses' convenience." *Amphion, Inc. v. Buckeye Elec. Co.*, 285 F. Supp.2d 943, 946 (E.D. Mich. 2003). It is the moving party's burden to show that § 1404(a)'s requirements are satisfied. *Id.*

Factors guiding the Court's decision as to transfer include:

> (1) the convenience of witnesses; (2) the location of relevant documents and relevant relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Overland, Inc. v. Taylor*, 79 F.Supp.2d 809, 811 (E.D. Mich. 2000) (internal quote and citation omitted).

B.   Discussion

Defendant points out that the Maryland case and the Michigan case are nearly identical, and that proceeding with both cases simultaneously would be unwise:

> Proceeding with both cases would be an entirely duplicative waste of judicial resources—resolution of one claim necessarily will resolve the other. Moreover, proceeding both here and in Maryland at the same time would expose the parties to the possibility of inconsistent rulings both on the ultimate claims and on any intermediate issues that might arise.

(Def.'s Mot. 6.)

In cases such as this, where identical parties have filed mirror-image complaints in two different district courts, the general rule is that the appropriate venue lies where the first suit was filed. *See In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1088 (6th Cir. 1996). In the discretion of the Court(s), however, this "first-to-file" rule often gives way where equity demands. In a recent unpublished opinion, the Sixth Circuit, relying on several other circuit courts, discussed the circumstances in which the rule might not apply:

5

> District courts have the discretion to dispense with the first-to-file rule where equity so demands. A plaintiff, even one who files first, does not have a right to bring a declaratory judgment action in the forum of his choosing . . . . Factors that weigh against enforcement of the first-to-file rule include extraordinary circumstances, inequitable conduct, bad faith, anticipatory suits, and forum shopping.

*Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Assocs.*, 16 Fed. Appx. 433, 437 (6th Cir. 2001) (unpublished) (citing *Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*, 819 F.2d 746, 749-50 (7th Cir. 1987) ("The mere fact that [plaintiff] filed its declaratory judgment action first does not give it a 'right' to choose a forum. This circuit has never adhered to a rigid 'first to file' rule. We decline [Plaintiff's] invitation . . . to adopt such a rule here.") (internal citations omitted); *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 628 (9th Cir. 1991); *E.E.O.C. v. University of Pennsylvania*, 850 F.2d 969, 972 (3D Cir. 1988)).

On balance, these factors weigh heavily in Plaintiffs' favor. Plaintiffs sent Defendant a letter on a Thursday, asking that Defendant consider Plaintiffs' proposed 2005 installment. The following Monday, Defendant filed the Maryland declaratory suit. Defendant was well-aware of Plaintiffs' location in Michigan, and likely presumed that Plaintiffs' potential complaint would be filed here. While there appear to be no extraordinary circumstances in this case, and it is unclear whether Defendants acted in bad faith, the Maryland declaratory action was an obvious anticipatory suit, likely for the purpose of securing Defendant's preferred forum. Defendants' conduct was inequitable.

Based on the facts of this case, the Court will exercise its discretion not to apply the first-to-file rule. The Court will instead look directly to the factors applicable to any other motion to transfer under 28 U.S.C. § 1404(a), as discussed above.

Defendant's argument that Maryland is the natural location for litigation of this dispute is unconvincing. Although the purchase agreement was entered into in Maryland, it concerns the purchase of business assets located in Michigan. There is no global venue provision in the agreement. There are two arbitration clauses governing disputes not at issue here, both of which require arbitration in Washington, D.C.[5] The only Maryland arbitration clause relates to the employment contract at issue in the Maryland case, but not currently before this Court. The purchase agreement's choice of law provision requires that contract disputes be settled under Delaware law, which federal courts in Maryland and Michigan are equally competent to apply. (Def.'s Mot. 7.)

Plaintiffs' arguments, on the other hand, weigh heavily in favor of a Michigan venue. For example, Plaintiffs point out the following relevant facts:

> Plaintiffs and CBay each maintain offices in southeastern Michigan. Plaintiffs have no employees in Maryland, they do no business in Maryland and they have absolutely no contact with Maryland whatsoever. The non-party witnesses such as hospital employees, doctors and other individuals who will be called to testify in connection with Plaintiffs' defense of CBay's Amended Complaint all reside in southeastern [sic] Michigan. CBay has not identified any witness by name who it expects to call who maybe [sic] outside of the jurisdiction of this Court . . . . [However,] Plaintiffs will have no ability to compel witnesses in Michigan to testify live at trial in Maryland.

(Pl.s' Resp. 7-8.)

Plaintiffs are correct that these factors militate heavily in their favor. *See* Fed. R. Civ. P. 45(b)(2). This Court opts not to transfer this case to the District of Maryland, as the

---

[5]Defendant argues that this fact supports its position, apparently on the basis that Washington D.C. is geographically closer to Maryland than it is to Michigan. (Def.'s Mot. 7.)

Eastern District of Michigan provides the better forum for resolving the issues presented by this case.

III.   Motion to Dismiss

    A.   Standard of Review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a Complaint.  In a light most favorable to Plaintiff, the court must assume that Plaintiff's factual allegations are true and determine whether the Complaint states a valid claim for relief.  *See Albright v. Oliver*, 510 U.S. 266 (1994); *Bower v. Federal Express Corp.*, 96 F.3d 200, 203 (6th Cir. 1996); *Forest v. United States Postal Serv.*, 97 F.3d 137, 139 (6th Cir. 1996).  This standard of review "'requires more than the bare assertion of legal conclusions.'" *In re Sofamor Danek Group, Inc.*, 123 F.3d 394, 400 (6th Cir. 1997) (quoting *Columbia Natural Resources, Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). The Complaint must include direct or indirect allegations "respecting all the material elements to sustain a recovery under *some* viable legal theory." *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993) (citations omitted) (emphasis in original).

    B.   Discussion

Defendant brings this motion partially as a Rule 12(b)(6) Motion to Dismiss, on the grounds that Plaintiff's complaint "merely asserts the conclusion that CBay owed more under the [purchase agreement] than it actually paid." (Def.'s Mot. 9.) While the Court finds such an argument premature, it also finds it without merit.

While Plaintiffs' complaint leaves much to the imagination, it meets the liberal pleading requirements of Rule 12(b)(6). Plaintiffs allege that there was a contract between the parties, that Plaintiffs fulfilled their obligations, and that Defendant has failed to live up to

8

its end of the bargain.  Plaintiffs further allege facts in support, including the facts that "Plaintiffs conveyed substantially all of the customers, assets and equipment" to Defendant, that "[t]he first annual installment payment due under the [purchase agreement] was for an amount in excess of $75,000.  This payment was due on February 12, 2005," and that Defendant has, "despite the repeated requests of the Plaintiffs, refused to pay any part of the 2005 Installment payment now due and owing to the Plaintiffs."  Plaintiffs also provide the relevant contractual language.  (Def.'s Mot. Ex. A.)

Defendant seems to argue that Plaintiffs failure to nail down a number more specific than "in excess of $75,000" renders Plaintiffs' complaint insufficient.  It is true that Plaintiffs have not alleged the facts necessary to show the specific damages owed, or even that *any* damages are due under the contract at all.  But Plaintiffs may be unable to do so.  The terms of the purchase agreement provide a complicated formula for determining the amounts of the 2005 and 2006 installments.  The 2005 installment amount—the basis for determining Plaintiffs' potential damages—depends not only on Plaintiffs' fulfilling their obligations under the purchase agreement, but also on factors outside of their control, such as the gross revenue of Defendant corporation.  Presumably, Plaintiffs have no access to this information without discovery.

While Plaintiffs may have alleged that the formula for determining the 2005 installment would have generated a positive number, this potential technical oversight will not defeat their complaint.  They have alleged the material elements of a contract claim, and the material facts to support it.  If Defendant indeed owes nothing to Plaintiffs under the purchase agreement, Defendant can make this argument on a more fully developed record.

9

Because the complaint includes direct or indirect allegations "respecting all the *material* elements" to support recovery, *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993), and Defendant has not shown "beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claim," *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), Plaintiff's complaint sustains a 12(b)(6) motion to dismiss.

IV.   Conclusion

Being fully advised in the premises, having read the pleadings, and for the reasons set forth above and on the record, the Court hereby DENIES Defendant's Motion to Dismiss or Transfer.

                                                    s/Nancy G. Edmunds
                                                    Nancy G. Edmunds
                                                    United States District Judge

Dated:  October 25, 2005

I hereby certify that a copy of the foregoing document was served upon counsel of record on October 25, 2005, by electronic and/or ordinary mail.

                                                    s/Carol A. Hemeyer
                                                    Case Manager